UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARY STROUD, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-01769-JCH |
| | ) | |
| ALLIANCEONE RECEIVABLES MANAGEMENT, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Plaintiff Mary Stroud's and Defendant AllianceOne Receivables Management, Inc.'s ("AllianceOne") Cross-Motions for Summary Judgment. (Doc. Nos. 16, 25.) The motions have been fully briefed and are ready for disposition.

## BACKGROUND

The essential facts are undisputed. On or about December 27, 2013, AllianceOne sent Stroud a letter regarding alleged debt she owed to "Credit First." The letter read, in part: "As of the date of this letter, you owe $698.22. Your account balance may be periodically increased due to the addition of accrued interest or other charges if so provided in your agreement with your original creditor." (Doc. No. 17, Defendant's SUMF, ¶¶ 1-2.) On or about July 22, 2014, Stroud contacted AllianceOne and spoke to an AllianceOne representative. She asked the representative whether the amount due was accruing interest, and the representative responded, "[w]e don't add interest or late fees ma'am, no." *Id.* ¶¶ 4-7. Stroud also asked the representative whether she could pay the original creditor directly, and the representative responded:

> They will just refer you back to us ma'am, because, we're the one, when it comes here there is no more interest or late fees and they don't offer settlements in-house, it's only settled once it goes to a collections agency and that's how the interest and late fees stop, is when it came here.

1

*Id.* ¶ 8. According to Stroud, during a subsequent phone call with Credit First, Credit First stated, "[y]ou can either pay them or you can pay us, it doesn't matter who you pay."[1] (Compl. ¶ 17; Doc. No. 27, Plaintiff's SUMF, ¶ 6.)

In September 2014, Stroud filed her one-count complaint in the Circuit Court of St. Charles County, alleging that AllianceOne violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), when it (1) falsely stated in the December 27 letter that her account balance may be periodically increased due to the addition of accrued interest or other charges; and (2) falsely stated during the July 22 phone call that she could not pay the original creditor directly. (Doc. No. 1.1.) AllianceOne timely removed the action to this Court and moved for summary judgment. (Doc. Nos. 1, 16.) Stroud thereafter filed a cross motion for summary judgment. (Doc. No. 25.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The substantive law determines which facts are material, and only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the Court must view the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial responsibility of informing the district court of the basis of motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

---

[1] Stroud has filed as an exhibit a recording of the alleged phone call between her and Credit First. AllianceOne objects to admissibility of this evidence based on, inter alia, hearsay grounds. The content of the recording, however, does not affect the Court's ultimate determination that summary judgment in favor of AllianceOne is proper.

discharges this burden, the nonmoving party "must set forth specific facts demonstrating that there is a dispute as to a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotations omitted). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

## DISCUSSION

The FDCPA was designed to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). "In order to establish a violation of the FDCPA, a plaintiff must demonstrate that 1) plaintiff has been the object of collection activity arising from consumer debt; 2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and 3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *O'Connor v. Credit Prot. Ass'n LP*, No. 4:11CV2187SNLJ, 2013 WL 5340927, at *6 (E.D.Mo. Sept. 23, 2013) (citations omitted). A debt collector engages in a prohibited act under the FDCPA by making a false, deceptive, or misleading representation in connection with the collection of any debt. *See* 15 U.S.C. §1692e; *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 770 (8th Cir. 2001).

In determining whether a debt collector's representations are false, deceptive, or misleading, courts within the Eighth Circuit apply the "unsophisticated-consumer standard," which is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung of the sophistication ladder." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal quotation omitted). This standard is intended to "protect[] the uniformed or naïve consumer," while also maintaining "an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id.* at 317-18. "[I]t is proper to assume that an

unsophisticated consumer would be confused or misled only if a significant fraction of people would be similarly misled." *Campbell v. Credit Prot. Ass'n LP*, No. 4:12CV00289AGF, 2013 WL 1282348, at *5 (E.D.Mo. Mar. 27, 2013) (internal quotations omitted).

False statements alone do not violate the FDCPA: a plaintiff must establish that the false statements are confusing or misleading, and that they are material. *Hale v. AFNI, Inc.*, No. 08 CV 3918, 2010 WL 380906, at *5 (N.D.Ill. Jan. 26, 2010) (citing *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645-46 (7th Cir. 2009)). Mere speculation that a statement confuses the unsophisticated consumer is insufficient. When a statement does not plainly reveal that it would be confusing to a significant fraction of the population, a plaintiff "must come forward with evidence beyond the [statement] and beyond his own self-serving assertions that the statement is confusing in order to create genuine issue of material fact for trial." *Campbell*, 2013 WL 1282348, at *5 (internal quotations omitted). "The materiality requirement is not concerned with mere technical falsehoods . . . but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.*, at *8 (internal quotations omitted). A plaintiff must show that the challenged language "'unacceptably increases the level of confusion.'" *Id.* (quoting *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005)).

AllianceOne disputes the falsity of the challenged statements, and further contends that, to the extent any statements made by AllianceOne's representative were technically inaccurate, they were not material misrepresentations. Stroud asserts that the statements were false and were intended to cause her to believe that there was urgency to the resolution of the debt, and that payment could only be made to AllianceOne.

4

As to the December 27 letter, Stroud specifically argues that the statement was false because "by [AllianceOne's] own subsequent admission, there was no possibility at all that interest or late fees would be added by [AllianceOne] at any point in the collection process." (Doc. No. 26 at 11.) She also urges that "[a] false statement that an account may periodically accrue interest and late fees may confuse a consumer into believing that the longer they wait, the more they will owe." *Id.* at 13. Stroud, however, has failed to raise a genuine dispute regarding whether the statement was false. In *Taylor v. Cavalry, Inv., LLC*, 365 F.3d 572, 574 (7th Cir. 2004), the dunning letter in question read, "[i]f applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." The plaintiffs argued that the statement was false because the creditors did not ultimately add any interest. The Seventh Circuit found their argument "downright frivolous" because "[t]he letter didn't say they would, only that they might." *Id.* at 575.

Stroud attempts to distinguish *Taylor*, arguing that AllianceOne subsequently admitted that there was no possibility that it would charge late fees or interest. She cites *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012), for the proposition that under the FDCPA it is improper for a debt collector to imply that certain outcomes might occur, when, legally, such outcomes are not possible. In *Lox*, the dunning letter stated, "[o]ur client may take legal steps against you and if the courts award judgement [sic], the court could allow court costs and attorney fees.'" *Id.* at 820-21. The plaintiff submitted evidence demonstrating--and the defendant agreed--that, as a matter of law, the defendant could not have obtained attorney's fees. *Id.* at 823. Stroud's reliance on *Lox*, however, is misplaced. *Lox* distinguished *Taylor*, stating that "[t]he only reasonable interpretation of [the statement in *Taylor*], even for an unsophisticated consumer, is that interest might accrue if the debtor's original debt agreement provided for such interest," and

5

that "there is no similar limiting language in [*Lox*]." *Id.* at 824 ("If CDA's dunning letter stated that attorney's fees could be awarded *if* Lox's agreement with [the creditor] provided for such fees, then Taylor would be an apt comparison, but this language is not present. As the statement was actually written, it is false, and therefore may be in violation of § 1692e."). Here, the limiting language found in *Taylor* is present. Although AllianceOne subsequently stated that it would not add late fees or interest, AllianceOne did not state--and Stroud has not shown--that AllianceOne could not have imposed additional charges as a matter of law.

As to the July 22 phone call, Stroud argues that "[a] consumer's decision to pay a debt in collections encompasses much more than simply verifying a debt and paying the amount; it intrinsically involves a decision on which party to pay," as "[p]ayments to an original creditor instead of the debt collector can have important implications." *Id.* at 8. Even assuming that the representative's statement that Credit First would refer Stroud back to AllianceOne was false, Stroud has failed to raise a genuine dispute regarding the statement's materiality. The statement on its face does not plainly reveal that it would materially mislead a significant fraction of people in such a way that would frustrate their ability to respond intelligently to the collection activity. The representative did not explicitly state that Stroud could not pay the original creditor, and it is not obvious that the statement would impact an unsophisticated consumer's ability to challenge the accuracy or legality of the debt; to further inquire with the original creditor regarding payment options; or to pay the debt.

Stroud claims that a consumer's decision to pay a debt in collections "intrinsically involves a decision on which party to pay," because, among other reasons, "[p]ayment to the original creditor greatly reduces the likelihood that the debt will ever be mistakenly sent to another collection agency or reported inaccurately to credit bureaus." (Doc. No. 26 at 8.)

6

However, she offers no extrinsic evidence in support of her assertions, and she relies solely on the arguments she sets forth in her response to AllianceOne's summary judgment motion and in her cross motion for summary judgment. *See Campbell*, 2013 WL 1282348, at *8 (extrinsic evidence may be satisfied through evidence such as consumer surveys or expert testimony). Therefore her self-serving, conclusory assertions, without more, are insufficient to defeat summary judgment. *See Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

On the record before the Court, it is clear that Stroud has presented no material issues of fact that preclude judgment as a matter of law in favor of AllianceOne.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. A separate judgment will accompany this Memorandum and Order.

Dated this 31st day of July, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE